61 F.Supp. 415 (1945)
UNITED STATES
v.
MURRAY et al.
No. 3701.
District Court, E. D. Missouri, E. D.
July 13, 1945.
*416 Harry C. Blanton, U. S. Atty., of Sikeston, Mo., for plaintiff.
Robert C. Hyde, of Poplar Bluff, Mo., for defendant.
HULEN, District Judge.
The defendants have been cited into this Court to show cause why they should not be found guilty of contempt of this Court. On the 27th day of June, 1945, on application of Chester Bowles, Price Administrator, Office of Price Administration, this Court issued an order for the inspection by representatives of the applicant of frozen food lockers operated by Lowrie T. Busby and Ivan S. Busby, co-partners, doing business under the name of Busby Frozen Food Bank, at 421 Cedar Street, Poplar Bluff, Butler County, Missouri. Representatives of the applicant, Marcus H. Solomon and Douglas A. Cox, proceeded to Poplar Bluff for the purpose of executing the Court's order. In the Motion for Citation for Contempt, it is alleged that while the representatives of the applicant were on the premises of Lowrie T. Busby and Ivan S. Busby, where the food lockers are located, on the 28th day of June, 1945, and while they were in the act of executing the order of this Court by inspecting the food lockers descibed in the order, the defendants threatened them with arrest if they proceeded with the inspection, and that as a result of the threats, the representatives of the applicant were forced to desist from the execution of the order of this Court. It is charged that the defendants, in obstructing the execution of the orders of this Court, acted wilfully, deliberately, and knowingly. Defendant Murray is health officer of the City of Poplar Bluff. Sims is Chief of Police.
By answer filed by the defendants, they deny that they threatened to arrest the representatives of the Office of Price Administration, Marcus H. Solomon and Douglas A. Cox, if they attempted to make an inspection of the food lockers in question, and plead further that by virtue of an ordinance of the City of Poplar Bluff, all handlers of food were required to be examined and in possession of a health certificate from a physician, and that all acts performed by them were in furtherance of the enforcement of the alleged ordinance. While the answers state that under the provisions of the ordinance defendant Murray, as health officer of the City of Poplar Bluff, was required to compel the inspectors to comply with the regulations of the Board of Health of the City of Poplar Bluff and the ordinances of that City regarding the handling of food, it developed at the hearing, by statement of counsel for the defendants, *417 that defendants are not now claiming that the ordinances of the City of Poplar Bluff applied or could be enforced to prevent performance of duties by a federal officer acting under a federal statute.
In determining whether or not the defendants shall be found guilty of contempt of this Court for the reasons set forth in the Motion for Citation for Contempt, on the record presented in this case, this Court will exercise the power to punish for contempt sparingly, with caution and deliberation.
The principal issue is now one of fact presented by virtue of the full and positive denial by defendant Murray that he threatened or intended to threaten Marcus H. Solomon and Douglas A. Cox, as representatives of the Office of Price Administration, with arrest if they executed the order of this Court and inspected the food lockers referred to, without first obtaining health "cards."
It is fundamental that the officers, agents, and instruments of the United States are immune from the provisions of a city ordinance in the performance of their duties. This principle of law, while having exceptions not here involved, applies to the ordinance alleged to have been the basis of the defendants' conduct in this case. It is the duty of the Government and its agencies to employ persons qualified and competent for their work. That duty it must be presumed to have performed, and a city cannot by ordinance impose further qualifications upon such officers and agents as a condition precedent to the performance and execution of duties prescribed under federal law.
The Court will first consider the case of the defendant Claude E. Murray. The main impression I get of this defendant is that he is imbued with his self-importance. His conduct suggests that a little authority in the hands of some people can become an aggravation, if not a dangerous thing. Part of his actions in this case I ascribe to lack of knowledge, experience, and proper advice.
From facts presented we cannot escape the conclusion that certain people and newspapers have encouraged this defendant in his position because they were adverse, if not to the law, then to the policy of the Office of Price Administration and its regulations. They were willing to urge the defendant in a course of conduct for which they cannot now be held responsible. They found an individual in this defendant unused to publicity, who readily fell a victim to their advice.
The conduct of the Office of Price Administration has not been perfect. Human beings are not infallible. Administration of the Office is a hard and difficult assignment. To the extent of my observation, the men charged with its administration are doing their best. The Office may be subject to criticism for its failure to act more vigorously in ferreting out black market operations  but not for carrying on an inspection service to determine if there are violations of the law. Over a million men have become battle casualties in order to save this Republic and its way of living. The least we can do in their absence is preserve this Republic and the way of living they left behind when they joined the armed services. If we lose the battle on the home front to control prices, prevent inflation, and stamp out black markets, we shall earn the contempt of our fighting men. The Office of Price Administration is the governmental agency charged with responsibility for controlling prices, preventing inflation and stopping the operation of black markets. It should have the support of all law abiding citizens and not be made the subject of bushwhacking expeditions. Public officials should be the last to stand in the way of enforcement of the law and its regulations. Public support and cooperation will be a material contribution to the success and enforcement of the law and avoidance of devastating inflation. Without the efforts of the Office of Price Administration, every citizen, and the salaried man most of all, would have suffered incalculable injury from inflation during the war, and we are not yet safely past the danger.
As I view the evidence in this case in regard to the defendant Murray, he may have acted in good faith when his complaints to the inspectors of the Office of Price Administration were first made, acting under what he believed to be his duty, but he soon became the victim of counsel of those who are against the policies of the Office of Price Administration and thereafter was held up to the public as one who stood between the good people of Poplar Bluff and epidemics of disease of the most devastating character. He states now that all meat touched by the inspectors must be destroyed, yet he shows no concern whatever as to the origin of the meat or whether *418 it came from diseased animals or who handled it prior to its getting into the lockers. His conduct in this case, and the false premises presented, have aroused considerable feeling in Poplar Bluff. To destroy meat because it is touched by the inspectors will cause more ill feeling, and that may be the plan and the purpose of such action. No one would refuse to eat the meat if informed as to the facts of this case. Contrary to the general situation throughout the Country, meat must be very plentiful in Poplar Bluff that its destruction follows the slightest provocation.
What stands out in this case is that if the defendant had been in good faith and had sought legal advice and acted upon it, this case would not be here, since his counsel, the City Attorney of Poplar Bluff, frankly admits knowledge of the law. However, counsel may have been unwilling to give advice that would have been unpopular or not the kind defendant wanted. There is evidence that after the order of this Court for inspection was served upon the defendant, a representative of the Office of Price Administration asked the defendant, in the presence of the City Attorney, what his position was going to be. The City Attorney deferred answer to the question to the defendant, and the defendant again expressed himself that if inspectors of the Office of Price Administration inspected the meat in the food lockers, without first securing a health card, he would place them under arrest.
The Office of Price Administration officials showed the utmost consideration of the officials of Poplar Bluff. They were patient in the face of the obstructive tactics encountered. For days they delayed the inspection while numerous conferences were held. There is no evidence upon which defendants' counsel can base his charge that the Office of Price Administration officials sought to entrap the defendant. What action, other than a citation, could be expected on defiance of the order of this Court?
On the issue whether the defendant Claude E. Murray did or did not threaten to arrest the officials of the Office of Price Administration if they proceeded in the execution of the order of this Court to inspect the food lockers without first securing a health card, Mr. Solomon and Mr. Cox testified to repeated threats of arrest by the defendant. It is this Court's opinion that the defendant Murray, in his denial of making threats of arrest and other testimony given at the hearing, coolly, calmly, and deliberately gave false testimony. This conclusion I reach from the testimony of inspectors Solomon and Cox, and in addition thereto from the conflicting testimony of defendants Murray and Sims. Defendant Murray stated that he gave no orders to Sims that he was to arrest the inspectors if they entered the food lockers during his absence. He testified under oath, "I never told Sims anything." Defendant Murray was followed to the witness stand by the defendant Sims, who frankly admitted a conversation with the defendant Murray, about the inspection of the food lockers by the Office of Price Administration officials, although he was somewhat vague as to the details of the conversation. Defendant Sims impressed the Court as a truthful man. Defendant Murray was quoted repeatedly by the Poplar Bluff newspaper as having threatened the inspectors of the Office of Price Administration with arrest if they inspected the food lockers without first obtaining health cards. All of the interviews with the newspaper, concerning threats of arrest, were denied by Murray as false. The Court does not personally know the editor of the Poplar Bluff newspaper, but he has had occasion to see and observe him in litigation in Court in Cape Girardeau, and was impressed that he was a man of honor and integrity. We do not believe the local press would repeatedly misquote the defendant. Over and above all of this testimony, we find the question  what is this case about? Why would the inspectors have stopped their inspection and resorted first to securing a court order and then citation for contempt, had the defendant not threatened them with arrest if they proceeded to inspect the contents of the food lockers? What attitude the District Attorney will take with regard to the testimony of the defendant Murray in this Court is not for this Court to determine. Under ordinary circumstances, giving of wilful, false testimony in the trial of a case in a Federal Court is contempt. To the end that this case shall not be complicated by contempt added to contempt, this Court will not now assess punishment because of the false testimony given by the defendant Murray.
There is a cloud upon the good faith of the defendant Murray in his defense that he was acting under an ordinance of the City of Poplar Bluff in insisting that the inspectors of the Office of Price Administration *419 secure health cards. When the inspectors first broached the subject of inspecting the food lockers, the demand of the operators was that a Court order be secured before it was done in some cases. Nothing was said by any one at that time about health cards. No ordinance of Poplar Bluff requires food handlers to have health cards. No regulation of the Board of Health was offered requiring food handlers to have health cards. In fact, defendant Murray testified he made no effort to locate such a regulation before coming to the hearing, where such a regulation was to be the foundation of his defense. So the ordinance and regulation, which since the defendant entered the scene have been publicly paraded as the authority for his action, are a myth insofar as the record in this hearing is concerned.
In inspecting the food lockers, the representatives of the Office of Price Administration were engaged in the performance of a duty arising under the laws of the United States, on order of this Court. The performance of that duty was directly obstructed by threats of arrest by defendant Murray. This Court finds such action on the part of defendant Murray was wilful. It constitutes contempt. If the orders of the Court are to be set aside, and their execution prevented by private citizens or local officers claiming to act under municipal ordinances then the Court would be powerless to enforce its decrees. That the execution of Court orders shall not be interfered with is the very bedrock of the power of Courts to administer justice. If the orders of this Court are unreasonable, illegal, or improper, there is an orderly way to test their legality.
The question now presented is  what punishment shall be assessed in this case? As the Court has observed, it is strongly of the opinion that much of the conduct of the defendant is the result of bad advice and counsel of those who were using him to vent their ill will against the Office of Price Administration. Inspection of the food lockers is proceeding without interference. With this in mind, it is the order and judgment of the Court that the defendant Murray is found guilty of contempt of this Court for wilfully and knowingly preventing the execution of the orders of this Court by threats of arrest of those engaged in the execution of those orders, and that he be committed to the custody of the Attorney General for imprisonment for a period of thirty days. Execution of the sentence shall be stayed during the good conduct of the defendant.
As to the defendant John W. Sims, it appears that he has been Chief of Police only a short period of time. Manifestly he cannot be charged with full knowledge of the duties of his office. There is evidence that he was never near the establishment where the food lockers were located, and that his remarks with reference to arresting the inspectors of the Office of Price Administration came in response to questions asked of him. Absent the conduct of the defendant Murray, the Court has grave doubts that the conduct of the defendant Sims would have prevented the execution of the orders of this Court. The Court being doubtful as to the guilt of defendant Sims, he is discharged.